In re Robert J. WICKS and Edith M. Wicks, Debtors.

Bankruptcy No. 894–84683–478.

United States Bankruptcy Court, E.D. New York.

Jan. 19, 1995.

Fischoff, Gelberg & Director by Gary Fischoff, Garden City, NY, for debtors.

Craig S. Heller, Garden City, NY, for creditor.

DECISION ON MOTION
FOR AN ORDER
FINDING A VIOLATION OF THE
AUTOMATIC STAY PURSUANT
TO SECTIONS
362(a)(3), 362(a)(7) and 362(h)
OF THE BANKRUPTCY CODE

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion by Robert J. Wicks and Edith M. Wicks (the "Debtors") under Sections 362(a)(3), 362(a)(7) and 362(h) of the Bankruptcy Code for an Order finding the Town of Hempstead Employees Federal Credit Union (the "Credit Union") in willful violation of the automatic stay and awarding damages and attorneys' fees; and the cross motion of the Credit Union pursuant to Section 362(a) for relief from the stay and leave to set off certain account funds against a loan obligation of the Debtors to the Credit Union.

### FACTS

The instant proceeding was commenced on August 16, 1994, when the Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Credit Union was listed among the Debtors' creditors. Included in the Debtors' petition as assets were a checking account and two savings accounts with the Credit Union. One of the savings accounts was a Christmas Club account. As of the date of the Debtors' petition, said accounts had a total balance of approximately $1,800. The Credit Union was listed as a creditor in the petition as having four unsecured claims, including two VISA card claims and two unsecured loans in the combined balance of approximately $24,000, as well as a secured car loan.

At or about the time of filing, pursuant to the request of the Debtors, the Credit Union terminated the Debtors' automatic payroll deduction for the unsecured obligations. More or less simultaneously therewith, the Credit Union placed an administrative freeze on the Debtors' savings accounts (including the Christmas Club account) and despite the requests of Debtors' counsel, refused to release same.

### DISCUSSION

▪ The facts, as set forth herein, are not disputed by the parties. The sole legal issue herein pertains to whether the administrative freeze of the Debtors' accounts violates the automatic stay imposed by Sections 362(a)(3) and (a)(7) of the Bankruptcy Code.

An administrative freeze occurs when, upon receiving notice of a bankruptcy filing, a financial institution prevents withdrawals from accounts that a debtor has at that institution. It usually occurs in a case where the debtor both owes the financial institution a debt and also has funds on deposit in a checking or savings account at the institution. *See, In re Homan,* 116 B.R. 595, 598 (Bankr.S.D.Ohio 1990).

There is a split in authority by other courts as to whether an administrative freeze of bank deposits constitutes a violation of the automatic stay. This Court is not constrained in its determination by any precedent in either this District or in this Circuit. Having examined the record, the motions of the parties and the plethora of relevant authorities, this Court is of the opinion that in the circumstances at bar, the administrative freeze does constitute a violation of the automatic stay.

The relevant portions of Section 362 of the Bankruptcy Code impose a stay, applicable to all entities of—

    (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; and

    (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

█ The scope of the automatic stay is broad; it prohibits, among other things, any act to obtain possession of property belonging to debtor's estate, any act to collect on a claim against debtor that arose before the filing in bankruptcy and any act to set off the debt owing to debtor that arose before the filing. *United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985). The freeze of the Debtors' account is in violation of Section 362(a)(3) as it is an act to exercise control over the property of the bankrupt estate. The funds in the accounts became property of the estate at the time that the petition under Chapter 13 was filed. Once the freeze was imposed, the Debtors lost control over the funds which were transferred to the control of the Credit Union. *See, In re Homan,* 116 B.R. at 602. The freeze effectively deprived the Debtors of the use of the funds. *See, e.g., In re Strumpf,* 37 F.3d 155 (4th Cir. 1994).

*The Setoff*

█ Under the Bankruptcy Code, creditors are given a right to cancel out mutual debts against one another. The purpose of setoff is to avoid "the absurdity of making A pay B when B owes A." *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913). Section 542(b) of the Bankruptcy Code preserves the right to setoff of mutual debts. Section 553 prescribes how the debts may be set off and states, in relevant part:

    (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

The right of setoff as set forth in Section 553, however, is limited by its terms and by the automatic stay provisions of Section 362.

The Credit Union argues that since the Bankruptcy Code provides a right to setoff, the freeze does not violate the stay, but merely preserves that right. This Court is unable to accept the position of the Credit Union and believes that the freeze is tantamount to a setoff and as such is violative of the stay imposed by Section 362.

The position of the Credit Union is premised on the fact that if there were no freeze, the Debtors would likely withdraw the funds from the account and leave the Credit Union without their security on the loan. The unenviable position of the Credit Union is referred to in the case law as the "Banker's Dilemma." In the likely instance that the account would be dissipated by the Debtors, the Credit Union may be correct in assuming that their right to setoff would be an empty right. *In re Edgins,* 36 B.R. 480, 484 (9th Cir. BAP 1984). "This will, all too often be an attempt to lock the barn door after the

horse has been stolen." *Id.* That reality, however, is not a sufficient basis upon which this Court can sanction the creation of a right to setoff that does not otherwise automatically exist by operation of law.

■ Section 553 requires that the obligation between the debtor and the creditor arise before the bankruptcy and that mutuality of obligation exists. Section 553 preserves the right to setoff only to the extent that the right, as defined by state law, actually exists. The Bankruptcy Court must determine if the right to set off is appropriate in each case before the set off can take place.

■ Before setoff can be made against debts owed by the petitioner in bankruptcy, a creditor must seek relief from the automatic stay. *United States on Behalf of IRS v. Norton,* 717 F.2d 767 (3d Cir.1983).

It has been clearly held that banks may not setoff debts during the pendency of a reorganization without obtaining relief from the automatic stay. *In re Penn Central Transportation Co.,* 453 F.2d 520 (3d Cir. 1972). That Court reasoned that if a bank could freeze a debtor's account, the business would no longer be viable and the prospects for reorganization would be diminished. The same reasoning has been made applicable to Chapter 13 proceedings wherein the automatic stay is in place to allow the debtor to be protected from creditors while a plan to repay creditors is developed. A freeze, even if just in name, without the funds actually being applied toward a loan, would render those funds unavailable for distribution as part of a plan and would hinder the Debtors' efforts at rehabilitation.

■ The retention of debtor's funds by a creditor provides sufficient evidence of intent to set off, and whether proceeding is one for reorganization or is under Chapter 13 of the Code, the creditor is not allowed to circumvent the automatic stay simply by delaying entry of setoff or credit in its books, thus holding funds until the case is closed or otherwise disposed of and then depositing them into their own bank account. *United States on Behalf of IRS v. Norton, Id.*

■ In order for a creditor to exercise the right to setoff, the Bankruptcy Code provides the mechanism under Section 362(d) for the creditor to move for relief from the automatic stay. "Conditioning a creditor's exercise of a potential setoff to the Code's requirement that the creditor first obtain relief from the stay is consistent with an acknowledged purpose of the Code to grant a debtor an immediate breathing spell, free from creditor pressure." *In re Homan,* 116 B.R. at 602.

■ Even creditors whose claims are secured under the Bankruptcy Code must submit to the risk inherent in judicial suspension of the rights they normally would have to enforce their claim against property of the debtor. *United States on Behalf of IRS v. Norton, Id.*

Although there are cases that distinguish an administrative freeze from an actual setoff, *See e.g. Stann v. Mid American Credit Union,* 39 B.R. 246 (D.Kan.1984), this Court refuses to follow that reasoning. Such cases that distinguish between a freeze and a setoff claim that a freeze is not an overt action, but results in inaction on the part of the bank. They claim that a freeze preserves, not alters the *status quo. See e.g. In re Learn,* 95 B.R. 495 (Bankr.N.D.Ohio 1989). That is simply not so in the Chapter 13 case before this Court. A freeze, just like a setoff by its nature, adjusts the rights of the parties, as it prevents the Debtors from having control over the funds and use of the funds that they would otherwise have.

This Court does not believe that it is necessary to make a finding as to whether the administrative freeze constitutes a setoff *per se* and whether and how the three elements of a setoff are satisfied by the facts herein. This Court does, however, find that the administrative freeze is a taking of control of property of the estate, and as such is clearly a violation of the automatic stay.

■ This Court is unable in the context of a Chapter 13 consumer filing, to accept the argument advanced by counsel for the Credit Union, that the funds on deposit constitute cash collateral pursuant to Section 363(a) and without the consent of the financial institution, 363(c) prohibits use of the funds without

court authorization. *See, In re Homan,* 116 B.R. at 604. The cash collateral argument is best used in the context of a Chapter 11 reorganization. *See e.g., In re Gazelle,* 17 B.R. 617 (Bankr.W.D.Wisc.1982); *Kenney's Franchise Corp. v. Central Fidelity Bank, N.A.,* 22 B.R. 747 (W.D.Va.1982).

Although the case law supporting the imposition of an administrative freeze on a debtor's account which is cited by the Credit Union is plentiful and compelling, it is significant to note that a large majority of the cases cited are not Chapter 13 cases. One Chapter 13 case that was cited may be distinguished from the case at bar, as it involved a debtor involved in a "highly suspect operation" which involved the issuance by the debtor of 22 checks on funds in the hands of the creditor. *See, Rio v. Army Aviation Center Federal Credit Union,* 82 B.R. 138 (M.D.Ala.1986). The decisions in the Chapter 7 cases cited by the Credit Union hold accordingly based upon the unique nature of Chapter 7 (*See e.g., In re Lee,* 40 B.R. 123, 126 (Bankr.E.D.Mich.1984)) and because "in a liquidation case, the freezing of the account merely continues the statutory scheme which Congress set out ..." *In re Davis,* 29 B.R. 652 (Bankr.W.D.N.Y.1983). They hold specifically that "in a *liquidation* case the withholding or "freezing" of funds ... does not violate the automatic stay ... provided that a complaint seeking relief from the stay is filed promptly thereafter. [emphasis added]" *In re Carpenter,* 14 B.R. 405 (Bankr. M.D.Tenn.1981). The facts herein are particularly inapposite, as not only is this a Chapter 13, rather than a liquidation, but the Credit Union, in placing the freeze on the account, failed to simultaneously seek a judicial determination of the relative rights of the parties with respect to the funds.

There may be some other equitable argument to prevent sanctions in a Chapter 7 case, but that is not the issue before this Court.

It is this Court's belief that the Credit Union has compromised the powers of the Bankruptcy Court and the capability of the Debtors to formulate a plan, by effectively circumventing the procedural mechanism for the relief desired as set forth in the Bankruptcy Code. "The freeze is a unilateral, extrajudicial determination by the creditor that the setoff right is valid." *In re Patterson,* 967 F.2d 505, 510 (11th Cir.1992), citing *In re Homan,* 116 B.R. at 603. "Allowing a bank to effect a setoff without any prior judicial determination of the legitimacy of its claim raises in any event, questions about fundamental fairness and due process of law." *In re New York City Shoes, Inc.,* 78 B.R. 426, 431 (Bankr.E.D.Pa.1987). It is this Court's belief that there is a growing trend away from countenancing creditors' extrajudicial resort to self-help, as evidenced in the most recent case of *Strumpf,* 37 F.3d 155.

*Available Alternatives*

Although this Court is sympathetic to the plight of the Credit Union and similarly situated creditors, it does not believe that these circumstances warrant a creditor resorting to self-help in violation of the relevant provisions of the Bankruptcy Code. These creditors may, as set forth in *Patterson,* 967 F.2d at 511, instead file an *ex parte* motion under 362(e) or 362(f) and have the funds paid into the Bankruptcy Court. Alternatively, the creditors may seek emergency relief under Section 105(a) or Rule 65 if they believe that they will be irreparably harmed prior to a scheduled hearing on a motion for relief from the stay. Alternatives such as these strike "the proper balance between the parties' interests. The creditors are protected from the risk that funds will be insufficient or unavailable to satisfy a later-determined valid right of setoff. The debtor is protected from the risk that a creditor will unilaterally deny the debtor access to funds in which the creditor does not have a valid right of setoff." *Patterson,* 967 F.2d at 511. By placing the funds at the discretion of the Court pending a judicial resolution, the debtor is not forced to lose control to the creditor. In the event that funds are removed by the debtor which are later determined to have been funds in which the creditor had a valid right, the Bankruptcy Code provides a mechanism by which to compensate said creditor. That creditor may then have an administrative claim in the ongoing Chapter 13 proceeding, or if the facts warrant it a post-petition judgment against the Debtor

for wrongfully dissipating funds which were subject to the creditor's right of setoff.

### CONCLUSION

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. Sections 1334 and 157(a). This is a core matter pursuant to 28 U.S.C. Section 157(b)(2)(A) and (G).

Based upon the foregoing, this Court finds that the Credit Union's administrative freeze of the Debtors' accounts was in violation of Sections 362(a)(3) and (a)(7) of the Bankruptcy Code. Based upon said violation, and in accordance with Section 362(d), sanctions are appropriate. Debtors' counsel is awarded $500.00 in attorneys' fees.

Although the Credit Union would be entitled to its right of set off in this case, the cross motion for relief from the stay is denied without prejudice based upon the fact that the Debtors propose to pay all creditors in full pursuant to a plan under Chapter 13. The funds are to be made available to the Debtors for said distribution on the condition that the Credit Union is granted a secured claim, to be paid in full, in the amount of the funds in the account.

Settle an Order in accordance with this decision.