In re Barry G. RADCLIFFE, Debtor.

Barry G. Radcliffe, Plaintiff,

v.

International Painters and Allied
Trades Industry Pension
Fund, Defendant.

Bankruptcy No. 05–67516 JPK.
Adversary No. 05–6264.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

July 19, 2007.

David M. Blaskovich, Esq., Casale, Woodward & Buls, LLP, Merrillville, IN, for the Plaintiff.

Frederick W. Dennerline, Esq., Indianapolis, IN, and Kent Cprek, Philadelphia, PA, for the Defendant.

### MEMORANDUM OF DECISION CONCERNING FINAL JUDGMENT

J. PHILIP KLINGEBERGER, Bankruptcy Court.

On March 14, 2007, the Court entered its Memorandum of Decision and Order which preliminarily determined matters in this adversary proceeding.[1] On March 26, 2007, the defendant filed its "Defendant's Motion for Reconsideration of March 14, 2007 Order and Relief Under Rules 7052, 9023 and/or 9024". Because the order entered on March 24, 2007 did not constitute a final judgment, technically review of the order under Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(b), Fed.R.Bankr.P. 9023/Fed.R.Civ.P. 59 and Fed.R.Bankr.P. 9024/ Fed.R.Civ.P. 60(b) would not be appropriate. However, as provided by Fed. R.Bankr.P. 7054/ Fed.R.Civ.P. 54(b), the March 14, 2007 order—not being a final judgment—is subject to revision at any time before the entry of a judgment which adjudicates all claims asserted in this adversary proceeding, and the Court deems the defendant's motion filed on March 26, 2007 to request review of the matters addressed in the March 17, 2007 order prior to the entry of final judgment. A hearing on the defendant's motion was held on June 1, 2007, at which the Court heard the arguments of counsel for the plaintiff and counsel for the defendant. The Court now states this Memorandum of Decision as its findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(a) with respect to all claims advanced in this adversary proceeding, for the purposes of entry of final judgment in this case.[2]

This adversary proceeding, initiated by a complaint filed on December 7, 2005 by Barry G. Radcliffe ("Radcliffe") against International Painters and Allied Trades Industry Pension Fund ("International"), seeks a determination by the Court that actions undertaken by International with respect to pension benefits payable to Radcliffe under an ERISA-qualified plan constituted a violation of the automatic stay of 11 U.S.C. § 362(a), thus giving rise to an action on the part of Radcliffe under 11 U.S.C. § 362(h).[3]

In paragraph 29 of the Stipulation of Facts filed by the parties on May 4, 2006, the parties have stipulated that this Court has personal and subject matter jurisdiction "of the causes of action asserted in the complaint". The Court agrees. The com-

---

1. That decision did not determine the amount of attorney's fees to be awarded to the plaintiff, reserving that issue for determination in accordance with the procedure set forth on pages 30–31 of the decision. The order entered on March 14, 2007 was thus not a final judgment; Fed.R.Bankr.P. 7054/Fed.R.Civ.P. 54(b).

2. While much of the Memorandum of Decision and Order entered on March 14, 2007 will be repeated in this decision, this Memorandum and Decision entirely supplants any and all determinations made in that order.

3. Radcliffe's voluntary petition which initiated this Chapter 7 case (case number 05–67516) was filed on October 13, 2005, and thus this case is governed by pre-BAPCPA law. The BAPCPA, effective in the context of this case with respect to cases filed on or after October 17, 2005, renumbered 11 U.S.C. § 362. This case is governed by 11 U.S.C. § 362(h), as that statutory designation existed prior to the effective date of the BAPCPA's amendments to 11 U.S.C. § 362.

plaint seeks relief pursuant to 11 U.S.C. § 362(h), and parenthetically pursuant to 11 U.S.C. § 105(a), and thus the Court's subject matter jurisdiction is provided by 28 U.S.C. § 1334(a) and (b), by 28 U.S.C. § 157(a) and (b), and by L.R. 200.1(a) of the Rules of the United States District Court for the Northern District of Indiana. The matters raised by the parties constitute core proceedings under 28 U.S.C. § 157(b)(2)(G) and (O).

## I. *HISTORY OF PROCEEDINGS AND THE RECORD*

This adversary proceeding was initiated on December 7, 2005 by Radcliffe's filing of his complaint. International filed its answer to the complaint on January 5, 2006. Following several preliminary pretrial conferences, on April 5, 2006, the Court entered its Order Concerning Determination of Case on a Stipulated Record, which established the deadline for the parties' submission of a stipulation of facts and all controlling evidence to be considered by the Court in arriving at a final judgment in this case, and further provided deadlines for the submission of legal memoranda by both parties. The required Stipulation of Facts was filed on May 4, 2006, and subsequently the parties each timely submitted briefs in accordance with the order entered on April 5, 2006.

On May 31, 2006, International filed its "Defendant's Motion for Relief from Automatic Stay" in case number 05–67516. This motion sought relief from the automatic stay, retroactive to the date of the filing of Radcliffe's Chapter 7 case, with respect to setoff of pension benefits payable by International to Radcliffe. By its Order of Consolidation of Contested Matter Into Adversary Proceeding entered by the Court on July 26, 2006 in case number 05–67516, the Court and the parties determined that the issues raised by International's motion for relief from the automatic stay were substantially related to the issues in this adversary proceeding. That order consolidated the issues in the contested matter arising from the motion for stay relief into the adversary proceeding, and determined that the issues in the contested matter would be determined in conjunction with determination of issues in the adversary proceeding—again on the basis of a stipulated record to be filed by the parties, as was provided for by the Court's order entered on April 5, 2006.

The consolidated proceeding is before the Court for final determination.

## II. *THE FACTUAL RECORD ESTABLISHED BY THE PARTIES*

The factual record is established solely by the Stipulation of Facts filed by the parties on May 4, 2006. Among the pertinent facts are those stated as follows in the Stipulation of Facts:

1. The Pension Fund is a trust fund or "multiemployer plan" and "employee benefit pension plan" with its principal place of business and is administered from an office located at 1750 New York Avenue, N.W., Washington, DC 20006.

2. Gary J. Meyers is Fund Administrator of the Pension Fund and has authority to act as a representative of the Fund in this matter.

3. Glass Service, Inc. ("Company") is a company owned and previously operated by Debtor and Roger Duszynski ("Duszynski").

4. Debtor and Duszynski were officers of Company.

5. The Company signed a collective bargaining agreement ("Labor Contract") with District Council 91, affiliated with the International Union of Painters and Allied Trades, for the period July 1, 2003

to June 30, 2006 on August 18, 2003.

6. In early 2004, the Company became delinquent in its contributions to the Pension Fund. The delinquency continued through several months of that year and through March of 2005.

7. On or about May 10, 2004, Company, Debtor and Duszynski executed an installment Promissory Note ("Note") in favor of the Pension Fund.

8. Debtor and Duszynski executed a Personal Guarantee obligating them personally to all obligations of Company in the event of a default by Company on the Note.

9. On December 28, 2004, the Pension Fund filed a Complaint against Debtor, the Company and Duszynski, in the United States District Court for the District of Columbia, which was docketed as Civil Action No. 04–2247 (the "DDC Action").

10. On or about April 28, 2005, a judgment by default was entered in the DDC Action in favor of the Pension Fund against Debtor and his co-defendants. The judgment was not appealed and became final.

11. The judgment in the DDC Action was transferred to Indiana on August 31, 2005, as *IUPAT Fund v. Glass Service, et al.*, No. 2:05MC0016 (N.D.Ind.).

12. The Company ceased operations in May 2005.

13. Before September 2005, Debtor filed an application with the Pension Fund for pension benefits.

14. On or about September 29, 2005, Debtor received a summary of pension plan benefit alternatives in a letter from the Pension Fund. Debtor completed the forms on Oc-tober 6, 2005 and returned them to the Pension Fund, on or about October 13, 2005.

15. Debtor commenced a Chapter 7 bankruptcy on or about October 13, 2005 (the "Petition Date"), in the United States Bankruptcy Court for the Northern District Of Indiana—Hammond Division, which was docketed as *In Re: Barry G. Radcliffe*, Case No.: 05–67516–jpk (the "Debtor's Bankruptcy").

16. The Pension Fund was listed as a creditor on Debtor's Schedule E—Creditors Holding Unsecured Priority Claims in the Debtor's Bankruptcy in the amount of $107,500.00.

17. The Pension Fund filed a Proof of Claim on February 24, 2006 in the Debtor's Bankruptcy. An accurate copy of the proof of claim is attached as Exhibit 7.

18. On November 2, 2005, the Pension Fund, by its representative Gary J. Meyers Fund Administrator, sent a letter to Debtor.

19. On November 3, 2005, Debtor sent a letter to the Pension Fund, in care of Gary J. Meyers, Fund Administrator.

20. On November 11, 2005, counsel for Debtor, Danette Garza, sent a letter to the Pension Fund.

21. From August 2005 to date, Debtor has not received any cash, check or deposit to a personal account of the Debtor or an account of the trustee in the Debtor's Bankruptcy or other payment from the Pension Fund.

22. From the date of the judgment in the DDC Action to the date of this stipulation, the Pension Fund states under penalty of perjury

that it has not received any cash, check, deposit or other payment from Company or Duszynski. Debtor has no admissible evidence to the contrary.

23. A copy of the summary plan description for the International Painters and Allied Trades Industry Pension Plan, effective January 1, 2003, was mailed to and received by Debtor before the Debtor's Bankruptcy, and any summary of material modifications after its issuance was mailed to and received by Debtor before the Debtor's Bankruptcy.

24. The assets of the Pension Fund and any pension benefits payable to Debtor are not part of the bankruptcy estate in the Debtor's Bankruptcy.

In more narrative form, as established by the foregoing, and as established by the documentary attachments to the Stipulation of Facts, Radcliffe was an officer in a corporation doing business under the name of Glass Service, Inc. This corporation was a party to a collective bargaining agreement between it and District Council 91, affiliated with the International Union of Painters and Allied Trades. Under this agreement, the corporation was obligated to make contributions to a pension plan administered by International on behalf of its employees subject to the terms of the collective bargaining agreement. Glass Service, Inc. became delinquent in its contributions to the pension fund, and on May 10, 2004, Radcliffe signed a document entitled "PERSONAL GUARANTEE, Promissory Note" which stated in pertinent part that if Glass Service, Inc. failed to comply with its obligations to make contributions to the pension fund at any time, Radcliffe personally "will pay all contributions, delinquencies and amounts specified in the agreement, that the Company owes to the Fund, within ten (10) days after receipt of a written demand for payment by the Fund". Paragraph 3 of this document stated the following:

> If I fail to pay on the terms set out here, I shall be liable under the same terms, and to the same extent, as the Company and my liability shall include the contractual and statutory liabilities of the Company.

The company failed to make required contributions to the Pension Fund, and on December 28, 2004, International filed a complaint against Radcliffe, and others, in the United States District Court for the District of Columbia. This complaint— attached as Exhibit 2 to the Stipulation of Facts—sought recovery against the defendants [including Radcliffe] of at least $51,740.32 as unpaid contributions required to have been made by Glass Service, Inc. to the Pension Fund. The clear basis of asserted liability of Radcliffe in this complaint was the obligation undertaken by him pursuant to the terms of the "PERSONAL GUARANTEE, Promissory Note". No allegation of the complaint sought to separately establish that Radcliffe was liable to the plaintiff on a separate assertion of fiduciary liability. A Default Judgment was entered against Radcliffe and the other defendants on April 29, 2005, in the amount of $74,946.47, comprised of various elements of damages asserted by the plaintiff. There is nothing in the complaint or in the judgment which either asserts or establishes that Radcliffe's obligation to International is based upon any form of fiduciary defalcation, default by Radcliffe in any capacity as a fiduciary, or any form of fraud. Rather, the record before the Court establishes that the sole basis for Radcliffe's liability under the judgment entered by the United States District Court for the District of Columbia was

the contractual obligation evidenced by the "PERSONAL GUARANTEE, Promissory Note".[4]

Radcliffe was a participant in the Pension Fund administered by International, and by letter dated September 29, 2005, International informed Radcliffe that his application for pension benefits had been approved [Exhibit 5, Stipulation of Facts].

Radcliffe filed his voluntary petition initiating case number 05–67516 on October 13, 2005.

By letter dated November 2, 2005, International advised Radcliffe that payment of his pension in the amount of $2,473.00 per month, effective September 1, 2005, had been approved. The letter further explained that a judgment had been entered against Radcliffe in the United States District Court for the District of Columbia in the amount of $74,946.47 "stemming from failure to pay pension and annuity contributions to the Pension Plan and the Annuity Plan, as required under the labor contract between Glass Service and the union". The letter asserted that the portion of the judgment owed to the Pension Fund was $53,811.57. In addition, the letter advised that because he had an outstanding personal debt to the Pension Fund, his monthly pension benefits would be offset against the debt until the amount of the offset had been sufficient to recover the judgment entered against him, or until he reached the age of 65. The pertinent portion of the letter then states:

> The offset of debts due the Fund is allowed by Section 7.30(c) of the Pension Plan document and applicable case law. See, e.g., *Coar v. Kazimir*, 990 F.2d 1413 (3d Cir.1993). As the debt exceeds the amount of your monthly benefit, you will not receive any actual payment. However, as the money is being applied directly for your benefit to reduce your indebtedness, the Pension Fund will report the pension payments that are offset to pay the judgment and the payments will be treated by the IRS as a pension benefit paid to you.

By letter dated November 3, 2005, Radcliffe responded to the November 2, 2005 letter, and advised International that he had filed a bankruptcy case. This letter was supplemented by a letter dated November 11, 2005 by Radcliffe's attorney, Danette Garza, directed to the Fund Administrator Gary J. Meyers, which in pertinent part stated:

> Please be advised that I have reviewed your correspondence to Barry G. Radcliffe dated November 2, 2005. I do agree and acknowledge that a default judgment was entered against the corporation and Barry Radcliffe personally. However, Mr. Radcliffe has filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code. I fail to understand how you are entitled to collect on a prepetition debt in violation of the automatic stay that is now in effect.
>
> Unless you can provide an applicable statute, case law or other basis for your actions, I fully intend to file a complaint with the Bankruptcy Court to address this violation.

---

**4.** In its submissions to the Court, International has addressed concepts discussed in certain cases concerning issues of whether *an indebtedness* owed by an employer to an ERISA-qualified employee benefit plan constitutes a "res" of the plan itself, thus transforming the employer from a debtor in relation to the plan into a fiduciary with respect to a plan asset, i.e., the debt owed to the plan. The Court does not endorse this "transformation" theory; *See, In re Tsikouris,* 340 B.R. 604 (Bankr. N.D.Ind.2006). Moreover, the judgment upon which International premises its position in this case clearly did not determine that Radcliffe's debt to the fund was in any manner attributable to any determination that he was a fiduciary in relation to the fund, on this or any other theory.

I will look forward to your response. If you have any questions, please do not hesitate to contact me.

There is no evidence in the record that International responded to the foregoing correspondence.

The International Painters and Allied Trades Industry Pension Plan states the following as to the prohibitions of ERISA on assignment and alienation of pension benefits:

(c) Effective on and after August 5, 1997, the prohibition on assignment and alienation shall not apply to an offset or other recovery by the Plan, pursuant to a criminal conviction, civil judgment, or settlement agreement as provided in IRC 401(a)(13)(C) and (D). Unless prohibited by law, the remedy in IRC 401(a)(13)(C) and (D) shall not preclude any other or greater right of offset or recovery by the Plan allowed by ERISA or its common law.

(d) Notwithstanding the foregoing, an offset under IRC 401(a)(13)(C) against the benefits of a Participant with a Spouse shall be valid only if one of the following conditions is satisfied.

(1) a written consent of the Spouse is obtained;

(2) the Participant's Spouse is required by a judgment, order, decree or agreement to pay the Plan any amount, or

(3) a judgment, order, decree or agreement provides that the Spouse shall receive a survivor annuity, as required by IRC 401(a)(11), determined as if the Participant terminated employment on the offset date (with no

offset to his benefits), to begin on or after Normal Retirement Age, and providing a 50% qualified joint and survivor annuity and a qualified pre-retirement survivor annuity.

[Page 49, Exhibit 9 to the Stipulation of Facts].

Radcliffe filed this adversary proceeding on December 7, 2005. In its answer filed on January 5, 2006 to Radcliffe's adversary complaint, International responded to Count I of the complaint by the following prayer for relief:

WHEREFORE, the Fund asks that the Bankruptcy Court dismiss the Complaint, enter judgment in its favor and against Plaintiff and grant such other or further relief, as may be just, necessary or appropriate, including an express determination that the automatic stay is not applicable or should be lifted or annulled.

International filed it Defendant's Motion for Relief from Automatic Stay in case number 05–67516 on May 31, 2006. That motion requested relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), "retroactively to the date of the Petition." The motion stated that the "Defendant relies upon its Trial Brief herein in Adversary No. 05–06264." [5]

## III. *ISSUES PRESENTED TO THE COURT*

As acknowledged by Radcliffe in his legal memoranda, the sole issue presented to the Court is his request for damages pursuant to 11 U.S.C. § 362(h) resulting from International's alleged violation of the automatic stay of 11 U.S.C. § 362(a).[6] Dam-

**5.** The motion is woefully inadequate under the requirements of Fed.R.Bankr.P. 9013; however, its total failure to state any basis for stay relief—or to even identify the subject of

the requested relief—is not a factor in the Court's decision.

**6.** While the complaint seeks to invoke the Court's injunctive authority under 11 U.S.C.

ages requested by Radcliffe include actual damages in the amount of $9,856.00, representing monthly pension benefits payable to Radcliffe by International allegedly illegally withheld; interest on the amount of the withheld payments; attorney's fees incurred in the prosecution of the action; and punitive damages.

■ There is nothing before the Court in this adversary proceeding which asserts a violation of the post-discharge injunction imposed by 11 U.S.C. § 524(a)(2).[7] The contested matter initiated by International's motion for stay relief essentially requests retroactive annulment or modification of the automatic stay in order to authorize the set-off of pension benefits for which International contends.

This adversary proceeding is thus rather limited in its scope. However, in order to determine whether or not Radcliffe may succeed on his 11 U.S.C. § 362(h) action, it is necessary for the Court to determine whether or not the set-off sought by International may be validly sustained under applicable law—putting aside for the moment the manner in which that "set-off" was sought to be effected by International. This determination will have an impact upon the ability of International to utilize set-off rights subsequent to the entry of discharge, even though that issue is not before the Court.

The Court deems the issues to be presented in this adversary proceeding to be the following:

A. Did the actions undertaken by International in not paying Radcliffe pension benefits under the plan administered by International constitute a violation of the automatic stay of 11 U.S.C. § 362(a), thus subjecting International to an action for damages under 11 U.S.C. § 362(h)?

B. Should the automatic stay of 11 U.S.C. § 362(a) be annulled or modified pursuant to 11 U.S.C. § 362(d) to retroactively authorize set-off by International of pension benefits payable by International to Radcliffe against obligations owed by Radcliffe to International?

## IV. *LEGAL ANALYSIS*

■ First, International has asserted, on pages 13–14 of its Trial Brief, that Radcliffe lacks standing to contest any purported violation of the automatic stay, and that any such dispute may only be asserted by the Chapter 7 Trustee. In support of its argument, International cites three reported decisions which have no precedential value in this Court, and with which the Court disagrees. It is beyond question that Radcliffe's interests in the Pension Fund do not constitute property of the debtor's Chapter 7 bankruptcy estate in this case by operation of 11 U.S.C. § 541(c)(2). The parties have so stipulated, and the United States Supreme Court has so held: *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). As a result, any application of 11 U.S.C. § 362(a) is not clouded by any consideration that the pension benefits payable to Radcliffe may be property of the estate. However, 11 U.S.C. § 362(a) is a multi-faceted statute. The statute applies not only to actions relating to proper-

---

§ 105(a), subsequent filings by Radcliffe do not continue to assert a request for this relief.

7. Radcliffe's discharge was granted by order entered on January 30, 2006 in case number 05–67516. Upon the entry of discharge, the automatic stay of 11 U.S.C. § 362(a) ceased to

be effective in the circumstances of this case, and the automatic stay was replaced by the post-discharge injunction of 11 U.S.C. § 524(a)(2); 11 U.S.C. § 362(c)(2)(C): *In re Howes,* 246 B.R. 280, 290 (Bankr.W.D.Ky. 2000).

ty of a debtor's bankruptcy estate, but also to actions taken against the debtor individually and to actions taken against property of the debtor, as contrasted to property of the debtor's bankruptcy estate. 11 U.S.C. § 362(a)(6) precludes "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title". 11 U.S.C. § 362(a)(7) precludes "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor". Both of these sections are implicated in this matter. International appears to contend that the only section of 11 U.S.C. § 362(a) to be considered in this consolidated matter is 11 U.S.C. § 362(a)(7). That is not accurate. While that section is very specific as to its focus, other sections of § 362(a) are not subsumed into it: the automatic stay applies as broadly as it possibly can, as all sections of § 362(a) provide. Under most circumstances a debtor does not have standing in a Chapter 7 case to assert violations of the automatic stay, or to contest relief from the automatic stay, *with respect to property of a Chapter 7 bankruptcy estate* unless the debtor asserts that stay relief should be opposed in order to allow administration of property by the Chapter 7 Trustee. However, that is not the case here. The debtor asserts that the actions of International have violated 11 U.S.C. § 362(a), and as noted above, those assertions fall within the provisions of both 11 U.S.C. § 362(a)(6) and of 11 U.S.C. § 362(a)(7), provisions designed to protect the debtor and not the bankruptcy estate. "To have standing to invoke a statute you must be one of the persons whom the statute is intended to protect (citation omitted)," *In the Matter of James Wilson Associates,* 965 F.2d 160, 168 (7th Cir.1992), and Radcliffe obviously satisfies this test. International's contention that Radcliffe does not

have standing with respect to his asserted action is hereby determined adversely to International.

On pages 14 and 15 of its Defendant's Trial Brief, International argues that 11 U.S.C. § 362(a) does not apply to pension benefit payments in a Chapter 7 case. As stated above, that contention is erroneous, and is hereby determined adversely to International: the automatic stay is implicated in this case regardless of the status of the pension benefits as property of Radcliffe's bankruptcy estate.

█ On pages 14 and 15 of its Defendant's Trial Brief, International asserts that the United States Supreme Court has determined that an administrative "freeze" on accounts is not a violation of the automatic stay, citing *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995). *Strumpf* was decided in order to reconcile a divergence in case law as to whether the mere withholding of a payment (absolutely vital to the assertion of a right of setoff) itself constituted a violation of the automatic stay. *Strumpf* determined this issue by stating that a *temporary withholding* of a payment under an asserted right of setoff is not a violation of 11 U.S.C. § 362(a). However, the facts in *Strumpf* are instructive. Within five days after the filing of a bankruptcy case by an account debtor with respect to whom Citizens Bank of Maryland asserted a right of setoff, the bank filed a motion for relief from the stay to exercise its setoff rights. *Strumpf* merely determined that this limited delay in withholding payment from the debtor in order to assert setoff rights does not constitute a violation of the automatic stay. It does not insulate any and all withholdings—of whatever nature or duration—from an action for violation of 11 U.S.C. § 362(a). In this case, Radcliffe's Chapter 7 petition was filed on October 13, 2005. While In-

ternational stated a request that the stay be ·modified in its answer to Radcliffe's complaint filed on January 5, 2006—and putting aside the fact that this request is not sufficient to seek to modify the automatic stay under the requirements of 11 U.S.C. § 362(d)—no affirmative action was requested by International with respect to its asserted rights of setoff until its Defendant's Motion for Relief from Automatic Stay filed on May 31, 2006, an action mandated by the Court to clean up the record. Again, *Strumpf* stands for the proposition that a limited period of withholding—necessary to allow a creditor to seek relief from the automatic stay to assert its setoff rights—does not violate 11 U.S.C. § 362(a). *Strumpf* is in no manner authority for the actions undertaken by International in this case, to the extent that the Court determines those actions were contrary to the provisions of 11 U.S.C. § 362(a); *See, In re Orr,* 234 B.R. 249 (Bankr.N.D.N.Y.1999); *In re Cullen,* 329 B.R. 52 (Bankr.N.D.Iowa 2005).

On pages 15–16 of its Defendant's Trial Brief, International asserts that Radcliffe has sustained no damages, and that therefore his action is a nullity. International has allegedly withheld from Radcliffe payments to which Radcliffe may be entitled under applicable law, and if the Court determines that the payments were illegally withheld, the amount of the withheld payments alone constitutes potential damages awardable to Radcliffe. This portion of International's argument is denied.

▪ The assertions of both parties revolve around the provisions of 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(4). In order to determine the matter before it [an action pursuant to 11 U.S.C. § 362(h) and an action pursuant to 11 U.S.C. § 362(d) ], it is in part necessary for the Court to determine whether or not International's assertion of a right of setoff is sustainable under applicable law. These provisions constitute the "anti-alienation" provisions applicable to ERISA—qualified pension plans; obviously, International asserts that its plan is so qualified, and it is therefore subject to both of these provisions. Without pausing to delineate the interplay between these two sections— both of which essentially require the same things in the context of this case—the Court will focus on 29 U.S.C. § 1056(d)(4), because both parties have done so.[8] 29 U.S.C. § 1056(d)(1) states that "(e)ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated". 29 U.S.C. § 1056(d)(4) then states:

> Paragraph (1) shall not apply to any offset of a participant's benefits provided under an employee pension benefit plan against an amount that the participant is ordered or required to pay to the plan if—
>
> (A) the order or requirement to pay arises—
>
> (i) under a judgment of conviction for a crime involving such plan,
>
> (ii) under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of

---

8. A portion of International's reply brief is devoted to its assertions that the Court must construe 29 U.S.C. § 1056(d)(4) in consonance with principles of federal common law. The Court has repeatedly read this section of the brief—nowhere is there a statement of the specific principle(s) of federal common to which International alludes or any citation to the authorities which apply these nebulous principles to the issues in this case. Whatever point was being made in this section of the reply brief will not be addressed further—it is not the Court's function to divine the focus of an argument that is not clearly presented, and to then speculatively refute it.

part 4 of this subtitle [section 1101 et seq. of this title], or

(iii) pursuant to a settlement agreement between the Secretary and the participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the participant, in connection with a violation (or alleged violation) of part 4 of this subtitle [section 1101 et seq. of this title] by a fiduciary or any other person,

(B) the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the plan against the participant's benefits provided under the plan, and

(C) in a case in which the survivor annuity requirements of section 1055 of this title apply with respect to distributions from the plan to the participant, if
. . .

■ As stated in Radcliffe's Plaintiff's Memorandum of Law (page 4), both 29 U.S.C. § 1056(d)(4)(i) and (ii) were added as amendments to existing law on August 7, 1997; 26 U.S.C. § 401(a)(13)(C) and (D) became essentially effective on August 6, 1997. As stated on pages 7–8 of International's Defendant's Trial Reply Brief, the legislative history regarding this addition is sparse, but the legislative history states, in H.R. Conf. Rep. 105–220, pp. 756–757 (July 30, 1997), the following:

There is no specific exception from the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the Internal Revenue Code which would permit the offset of a participant's benefit against the amount owed to a plan by the participant as a result of a breach of fiduciary duty to the plan or criminality involving the plan. Courts have been divided in their interpretation of the prohibition on assignment or alienation in these cases. Some courts have ruled that there is no exception in ERISA for the offset of a participant's benefit to make a plan whole in the case of a fiduciary breach. Other courts have reached a different result and permitted an offset of a participant's benefit for breach of fiduciary duties.

\* \* \*

Senate Amendment

The Senate amendment permits a participant's benefit in a qualified plan to be reduced to satisfy liabilities of the participant to the plan due to (1) the participant is being convicted of committing a crime involving the plan, (2) a civil judgment (or consent order or decree) entered by a court in an action brought in connection with a violation of the fiduciary provisions of title I of ERISA, or (3) a settlement agreement between the Secretary of Labor of the Pension Benefit Guaranty Corporation and the participant in connection with a violation of the fiduciary provisions of ERISA. The court order establishing such liability must require that the participant's benefit in the plan be applied to satisfy the liability.

As clearly stated in the legislative history—although this Court does not customarily rely on legislative history as an accurate statement of the intended purpose of Congress in enacting a statute—the 1997 amendments were enacted to negate the decisions of courts which had held that there was *no exception* to the anti-alienation provisions of ERISA which would even allow for the offset of pension fund benefits against obligations owed by the beneficiaries to the fund for defalcation by the beneficiaries while acting in a fiduciary capacity *in relation to the fund.* It is clear to the Court that this amendment was intended to define precisely the cir-

cumstances under which an obligation owed by a qualified plan to a beneficiary may be offset against the beneficiary's obligation to the plan. The statutory scheme clearly evidences Congress' intent that the beneficiary of an ERISA-qualified plan is to receive the benefits to which he is entitled under the plan *unless* the conduct of the beneficiary in his status as a controlling person or fiduciary in relation to the res of the plan has led to loss to the plan.[9]

In discussing this issue, let's first put aside the decision of the United States Supreme Court in *Guidry v. Sheet Metal Workers National Pension Fund, et al.,* 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990). The issue confronted in *Guidry* was whether the anti-alienation provisions of ERISA precluded a pension fund's setoff, against a beneficiary's benefits, of a debt incurred by a beneficiary to a trade union—rather than to the pension fund itself—for debts incurred to the union for defalcation while acting as an officer of the union. The Court held that this form of setoff was prohibited. The lower court in *Guidry* had imposed a constructive trust upon the beneficiary's pension benefits for the benefit of the union, and had authorized withholding of pension benefits in order to pay the judgment obtained by the union against the beneficiary. Although subsequent courts disagreed on whether or not *Guidry* should be limited to its facts, the simple fact is that in *Guidry* the Supreme Court stated:

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. Section 206(d) reflects a considered congressional poli-

cy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

493 U.S. 365, 110 S.Ct. 680, 687, 107 L.Ed.2d 782. *Guidry's* facts dealt with a circumstance in which a "third party" sought to collect an obligation of a plan beneficiary from benefits payable to the beneficiary. However, the above-quoted language from the decision subsequently gave courts a great deal of difficulty in construing the extent to which the plan itself could recover obligations owed to it by a beneficiary. For example, in *Herberger v. Shanbaum,* 897 F.2d 801 (5th Cir.1990), the United State Court of Appeals for the Fifth Circuit concluded that ERISA's anti-alienation provision precluded even a setoff of debts owed by a defalcating trustee of the plan to the plan itself. In *Coar v. Kazimir,* 990 F.2d 1413 (3rd Cir.1993), *rehearing denied,* (1993), *cert. denied,* at 510 U.S. 862, 114 S.Ct. 179, 126 L.Ed.2d 138, the United States Court of Appeals for the Third Circuit arrived at a contrary conclusion, determining that ERISA's anti-alienation provision did not preclude offset of vested benefits of a beneficiary who, *as a trustee of a pension fund,* had breached his fiduciary duty to the fund. Without expounding further, the Court has examined all decisions that its research has disclosed which address—both pre—and post-*Guidry*—issues which relate to setoff of benefits payable to an ERISA-qualified plan beneficiary against obligations owed by that beneficiary to the plan. In its research,

---

**9.** As addressed in footnote 4, nothing in the record before the Court establishes that Radcliffe was a fiduciary or controlling person in relation to the fund administered by International.

the Court has yet to uncover a case having facts similar to those of this case, i.e., a non-criminal and non-defalcating fiduciary debt to a pension plan, sought to be offset against the plan's obligation to pay benefits to the beneficiary. The closest case is *McLaughlin v. Lindemann, et al.,* 853 F.2d 1307 (5th Cir.1988), in which the beneficiary's liability to the plan was based on the beneficiary's participation in a transfer which involved over-valuation of transferred assets—without any finding of criminal conduct or fiduciary defalcation. In that case, the Court refused to allow offset, thereby giving full rein to ERISA's anti-alienation provisions.

■■■■■ International argues that the proposed setoff of its obligations to Radcliffe against Radcliffe's obligations to it is not within the anti-alienation/non-assignment provision at all. That argument is totally undercut by the provisions of applicable Internal Revenue Service regulations. 26 C.F.R. § 1.401(a)–13(b) states the following:

> **(b) No assignment or alienation—(1) General rule.** Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, *assigned (either at law or in equity), alienated* or subject to attachment, garnishment, levy, execution or other legal or equitable process. (emphasis supplied).

The terms "assignment" and "alienation" are defined by 26 C.F.R. § 1.401(a)–13(c)—a provision incorporated into International's plan—in pertinent part as follows:

> **(c) Definition of assignment and alienation—(1) In general.** For purposes of this section, the terms "assignment" and "alienation" include—
>
> . . .

> (ii) *Any direct or indirect arrangement* (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary *a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.* (emphasis supplied)

The right of setoff asserted by International is clearly an "assignment" and "alienation" within the foregoing regulation, and it is the clear intent of both 26 U.S.C. § 401(a)(13)(C) and of 29 U.S.C. § 1056(d)(4) to limit the ability of an ERISA-qualified plan to reduce benefits to a beneficiary of that plan only to the specific circumstances delineated in those statutes. This conclusion is further dictated by the principle of statutory construction known as *expressio unius est exlusio alterius,* which in simple English means that to express or include one thing implies the exclusion of the other; *See, In re Globe Building Materials, Inc.,* 463 F.3d 631, 635 (7th Cir.2006). The two parallel statutes expressly state the circumstances under which setoff/recovery of debts owed to the plan against benefits payable to a beneficiary of an ERISA-qualified plan are authorized, and by so expressly stating those circumstances negate any other circumstances as giving rise to a right of setoff/recovery. The instant case does not present one of those delineated circumstances. The record in the case establishes that Radcliffe was not in any manner a fiduciary with respect to the Pension Fund. In fact, the record clearly and absolutely demonstrates that Radcliffe's liability to the Fund arose solely from his personal guarantee of an obligation owed to the fund by a corporation of which he was a principal—strictly a contractual obligation, and clearly one beyond the scope of the "trustee defalcation" exceptions to the anti-alienation provisions of ERISA.

International in part contends in its reply brief that the amendments to 26 U.S.C. § 401(a)(13) and to 29 U.S.C. § 1056(d)(4) are intended to apply to only "third party" actions, i.e., assignments/alienations by which an entity other than the plan itself seeks to reach a beneficiary's interest in the plan. There is no restriction in either statute to solely third party creditors. The language of both statutes applies to "any offset" of a participant's benefits. The legislative history discusses the need for an exception with respect to "breach of a fiduciary duty to the plan or criminality involving the plan"—a focus that relates solely to the direct relationship between the plan and the participant, and not in any manner to the derivative third party relationship addressed in *Guidry*. 26 C.F.R. § 1.401(a)—13(c) defines "assignment and alienation" as any arrangement whereby "a party" acquires a right enforceable against the plan—again not differentiating between direct or third party relationships. There is simply no basis in the language of the applicable statutes and regulations for the arguments of limitation to third party creditors asserted by International.

■ 11 U.S.C. § 553(a) provides that the Bankruptcy Code's provisions—**except as otherwise provided in § 362**—"does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case". However, the right of offset is determined by law apart from that provided by the Bankruptcy Code. 11 U.S.C. § 553(a) specifically states that the right of setoff is subject to the provisions of 11 U.S.C. § 362, even apart from whether or not a right of setoff can be validly exercised under otherwise applicable law. As stated in *Strumpf, supra.:*

> In our view, petitioner's action was not a setoff within the meaning of § 362(a)(7). Petitioner refused to pay its debt, not permanently and absolutely, but only while it sought relief under § 362(d) from the automatic stay. Whether that *temporary refusal* was otherwise wrongful is a separate matter—we do not consider, for example, respondent's contention that the portion of the account subjected to the "administrative hold" exceeded the amount properly subject to setoff. All that concerns us here is whether the refusal was a setoff. (emphasis supplied).

516 U.S. 16, 116 S.Ct. 286, 289, 133 L.Ed.2d 258. If a creditor does not have a validly enforceable right of setoff, even the safe harbor of temporary withholding provided by *Strumpf* will not insulate a creditor from an action for violation of the automatic stay under 11 U.S.C. § 362(a).

In order to determine whether or not Radcliffe may assert a claim under 11 U.S.C. § 362(h), it has been necessary for the Court to determine whether or not International had any valid right of setoff under the circumstances of this case. The Court determines that International had no legal right to either withhold or offset any pension benefits payable to Radcliffe with respect to the indebtedness owed by Radcliffe to International. The Court's determination as stated above causes discussion of other issues presented by the parties, including those which concern whether the entire stream of payments to Radcliffe under the pension plan constitute pre-petition or post-petition obligations of International, to be unnecessary.

■ The evidence does not establish that International *effected* a setoff, and thus the evidence does not establish a violation of 11 U.S.C. § 362(a)(7). However,

International's *assertion of a right of setoff* in a circumstance in which none existed constitutes an "act to collect, assess or recover a claim against the debtor that arose before the commencement of the case", and thus constitutes a violation of 11 U.S.C. § 362(a)(6). International had no legally enforceable right of setoff under applicable law, and thus its continued retention of Radcliffe's benefits after the filing of Radcliffe's bankruptcy petition violated 11 U.S.C. § 362(a)(6). Moreover, even if International could have validly asserted a right of setoff, its withholding of Radcliffe's benefits without immediately seeking relief from the automatic stay to seek to effect its setoff rights violated 11 U.S.C. § 362(a)(6) under the principles of *Strumpf.*

Because it has no enforceable right to setoff, International has failed to establish cause for its request for relief from the automatic stay as required by 11 U.S.C. § 362(d)(1).

## V. RELIEF TO BE ACCORDED TO RADCLIFFE

11 U.S.C. § 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

As stated above, International's actions violated 11 U.S.C. § 362(a)(6) in that those actions constituted an "act to collect . . . or recover a claim against the debtor that arose before the commencement of the case". Its actions violated 11 U.S.C. § 362(a)(6) because International asserted a right of setoff with respect to a debt owing to the debtor that arose before the commencement of the case when no right of setoff existed, and because International failed to promptly seek relief from 11

U.S.C. § 362(a) in order to present its asserted right of setoff to the Court. In this latter context, the following is noted. International determined that the debtor was entitled to pension benefits. Subsequent to the filing of the debtor's case, International sent a letter to the debtor which asserted its rights of "setoff" against pension payments required to be made by it to the debtor. When International was informed of the pendency of the debtor's case—both by a letter from the debtor and by a letter from counsel for the debtor—there was no response, at least as demonstrated by the record, and International thus continued to withhold payments it owed to the debtor subsequent to the imposition of the automatic stay. International took *no* affirmative action to seek to assert its setoff rights until May 31, 2006. *Strumpf, supra.,* holds only that a *temporary* withholding of funds subject to setoff does not violate the automatic stay. The implicit holding of *Strumpf* is that an action to seek relief from the automatic stay to effect a setoff must be undertaken in very short order. International's delay in seeking relief from the automatic stay is not in any manner within the parameters of the limited withholding authorized by *Strumpf.* Thus, even if one were to determine that International could legally assert a right of setoff, International's actions violated 11 U.S.C. § 362(a)(6). The assertion of "setoff" in any manner is not an action excluded from the automatic stay, and the delay exhibited in this record by International in seeking to obtain relief from the automatic stay *ipso facto* violated the automatic stay—even if one were to generously construe International's answer to the adversary complaint to be tantamount to a request for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

The next issue becomes whether or not International's violation of 11 U.S.C. § 362(a) was "willful". The term "willful" is one which surfaces in several places in the Bankruptcy Code, and the Court sees no reason to construe that term differently under 11 U.S.C. § 362(h) than the term has been construed in other sections of the Code.

The term "willful" raises its head in 11 U.S.C. § 523(a)(6), which provides that an indebtedness "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge. This term was the subject of the decision of the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In *Geiger*, the Supreme Court construed the adjective "willful" in conjunction with its modified noun, "injury", and determined that a "willful injury" is one in which injury is intended by an act of the debtor, rather than one in which an intentional act by the debtor causes injury. In *In re Whiters*, 337 B.R. 326 (Bankr.N.D.Ind.2006), this Court construed the evidentiary requirements for establishing a "willful injury" under 11 U.S.C. § 523(a)(6) and determined that the creditor must establish by at least circumstantial evidence that the debtor had a *subjective* state of mind to commit injury to a property interest of the creditor. As enunciated in *Whiters,* the subjective intent is focused not on creating a financial hardship for the creditor, but rather on whether the debtor intentionally—as contrasted to negligently or perhaps even grossly negligently—deprived the creditor of a property interest. In the context of this case and in the context of 11 U.S.C. § 362(h), a "willful violation" of the automatic stay of 11 U.S.C. § 362(a) is established by evidence that the creditor intentionally—with knowledge of the pendency of the bankruptcy case—deprived the debtor of a property right or interest in property, or undertook an action against the debtor, precluded by 11 U.S.C. § 362(a). The evidence in this case establishes quite clearly that International directed its actions against the debtor's entitlement to receive payment of his monthly pension benefits; intentionally undertook that action; and did so in what the Court can only characterize as in a manner which totally disregarded its obligations under 11 U.S.C. § 362(a)(6) and under *Strumpf, supra.* by not taking any affirmative action until May 31, 2006 to seek to justify its actions by obtaining relief from the automatic stay. International apparently relied on *Coar v. Kazimir,* 990 F.2d 1413 (3rd Cir.1993), *rehearing denied,* (1993), *cert. denied,* at 510 U.S. 862, 114 S.Ct. 179, 126 L.Ed.2d 138, to justify its actions. First, *Coar* dealt with a circumstance of defalcation by a trustee of a pension fund *in relation to the fund,* and did not in any manner address the circumstances of a mere contractual obligation to pay the fund. Putting that aside, as stated in *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265, 268–269 (1st Cir.1999):

> A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful (citations omitted). A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation.

As stated in *In re Halas,* 249 B.R. 182, 191 (Bankr.N.D.Ill.2000):

> A creditor can be subject to liability under § 362(h) if the creditor engages in conduct which violates the automatic stay, with knowledge that a bankruptcy

petition has been filed. *In re Roete*, 936 F.2d 963, 965 (7th Cir.1991). Willfulness can be found even if the creditor believed himself justified in taking the actions found to violate the stay. *In re Sumpter*, 171 B.R. 835, 843 (Bankr. N.D.Ill.1994). Ignorance of bankruptcy law does not excuse anyone involved in a willful violation.

The Court determines that the actions of International in not paying Radcliffe his regular monthly pension benefits constituted a willful violation of 11 U.S.C. § 362(a)(6).

As stated above, Radcliffe has limited this action to pre-discharge violations of the automatic stay, and no part of this proceeding implicates 11 U.S.C. § 524(a)(3). Thus, Radcliffe's damages are limited to those arising from violation of 11 U.S.C. § 362(a).

 Clearly, Radcliffe's damages include the amount of pension benefits not paid to him by International prior to the entry of his discharge. The Court determines this amount to be $12,185.00 [ (5 × $2,437.00)], and not the $9,856.00 figure stated on page 8 of the Plaintiff's Reply.[10]

 The Court also determines that Radcliffe is entitled to interest on this amount for the period of its unauthorized withholding. On pages 15–16 of its Brief filed on March 26, 2007, International asserts that pre-judgment interest should be computed under regulations applicable to ERISA. The Court determines this contention adversely to the defendant: this adversary proceeding is an action under 11

U.S.C. § 362(h), and thus computation of interest is governed by principles applicable to federal judgments awarded by United States Bankruptcy Courts under provisions of the Bankruptcy Code: ERISA is involved only as the predicate, in a sense, of the lack of justification for the stay violation, not as an independent focus of this action. As stated in *In re Milwaukee Cheese Wisconsin, Incorporated*, 112 F.3d 845, 849 (7th Cir.1997) [a case decided under 11 U.S.C. § 547, but the principles of which apply with equal force to this case]:

> Doubtless judges have discretion to exercise when deciding whether to award prejudgment interest-more discretion than they possess when deciding whether to avoid a preferential transfer. Discretion is not, however, authorization to decide who deserves the money more. Discretion must be exercised according to law, which means that *prejudgment interest should be awarded unless there is a sound reason not to do so.* The only reason appellants give why discretion should have been exercised in their favor is that the case has lasted a long time, so interest has mounted; an award now, they say, would be "punitive." This misunderstands why courts award prejudgment interest. Compensation deferred is compensation reduced by the time value of money; if the proceeds had been returned to Milwaukee Cheese's estate and distributed to the creditors, they would have been able to earn interest on it during the last decade. That is why prejudgment interest

---

**10.** International had no legal right to withhold any payments from Radcliffe, and thus International's continued retention of even the benefits accrued prior to the filing of Radcliffe's case, after the automatic stay came into effect, gives rise to damages for violation of the stay. Thus, the actual damages are the monthly benefits ($2437.00 per month) for the months of September through December of 2005, and for the month of January, 2006. Fed.R.Civ.P. 54(c), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7054, provides that every final judgment shall grant the relief to which a prevailing party is entitled, even if that relief was not requested in that party's pleadings.

is an ingredient of full compensation. It is also why an award, no matter how large, cannot be called "punitive": defendants can invest the funds while the litigation proceeds, then use the interest they receive to satisfy the obligation. (emphasis supplied)

The foregoing direction to federal courts in the Seventh Circuit to award prejudgment interest as the rule rather than as the exception is essentially a reiteration of the determination previously made in *Gorenstein Enterprises, Inc. v. Quality Care—USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989), which stated:

While the statute makes no reference to prejudgment interest, the Gorensteins do not question that federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law. See, e.g., *West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947); *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1297–99 (7th Cir. 1987); *Central Rivers Towing, Inc. v. City of Beardstown,* 750 F.2d 565, 574 (7th Cir.1984); *Hillier v. Southern Towing Co.,* 740 F.2d 583 (7th Cir.1984); *Myron v. Chicoine,* 678 F.2d 727, 733–34 (7th Cir.1982); *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988 (6th Cir.1982); *L.P. Larson, Jr., Co. v. William Wrigley, Jr., Co.,* 20 F.2d 830, 836 (7th Cir.1927)—the last a trademark case. The areas in which such interest is allowed, illustrated by the cases just cited, are diverse. The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay.

The next question which arises is the rate at which interest is to be imposed. As stated in *Cement Division, National Gypsum Co. v. City of Milwaukee,* 144 F.3d 1111, 1114 (7th Cir.1998):

Unlike postjudgment interest, there is no statutory rate of prejudgment interest, see *Gorenstein Enters. v. Quality Care–U.S.A., Inc.,* 874 F.2d 431, 436 (7th Cir.1989), and the amount of prejudgment interest required to properly compensate the victim can vary depending on the particular circumstances of the case. Accordingly, we entrusted the details of the calculation to the discretion of the district court, see [*Cement Division, National Gypsum Co. v. City of Milwaukee,*] 31 F.3d [581]at 587 [(7th Cir.1994)], and our review is limited to whether the district court has reasonably applied the appropriate federal common law principles-including the guidance provided by our previous opinion. *See United States v. Taylor,* 487 U.S. 326, 336, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988); *Cook v. Niedert,* 142 F.3d 1004, 1011 (7th Cir.1998). In our opinion remanding for determination of prejudgment interest, we indicated that "the best starting point is to award interest at the market rate, which means an average of the *prime rate* for the years in question." 31 F.3d at 587 (emphasis added).

The foregoing statement was made more conclusive in *First National Bank of Chicago v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir.1999), as follows:

Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in "refined rate-setting" direct-

ed at determining a more accurate market rate for interest. *Cement Division, National Gypsum Co. v. City of Milwaukee,* 144 F.3d 1111, 1114 (7th Cir. 1998); *In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1332 (7th Cir. 1992). We hold today that to set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation.

The "prime rate" is that reported by the Federal Reserve Board; *see, Till v. SCS Credit Corporation,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). The concept of "average prime rate" is meant to apply to a circumstance in which a single sum is payable upon a date certain. That is not the case here. Rather, each benefit payment accrued separately.

 The relevant period for the accrual of prejudgment interest must be determined. There is no controlling Seventh Circuit precedent on this issue, and as one might expect there is a divergence of opinion in courts throughout the country as to the beginning date for accrual of prejudgment interest. The Court adopts what is in essence the majority rule. The beginning date for accrual of prejudgment interest is the date of the demand for return of the payments made by the Radcliffe to International; See, *In re Cybermech, Incorporated,* 13 F.3d 818, 822 (4th Cir.1994).

Based upon the foregoing, pre-judgment interest accrues from November 11, 2005–the date of Radcliffe's attorney's letter to International demanding a justification for withholding-a letter which the record before the Court establishes was ignored by International.

 The Court determines that the manner of calculating the interest to be paid by International is to apply the prime rate in effect on the date upon which each pension payment should have been made

to the amount of that payment, with interest accruing at that rate until payment in full of the amount of the withheld payment. The record establishes that each payment was vested as of the first day of the month, beginning with September 1, 2005. The prime rate has remained constant at 8.25% since July 1, 2006. The date of accrual of interest for the payments for September, October and November of 2005 is November 11, 2005. Interest thus accrues from November 11, 2006 on the amount of $7311.00 at the rate of 8.25% until that amount is paid in full. Interest similarly accrues at the rate of 8.25% on the amount of $2437.00 from December 1, 2005 until that amount is paid in full, and interest accrues at the rate of 8.25% on the amount of $2437 from January 1, 2006 until that amount is paid in full.

 Radcliffe has also requested an award of punitive damages. Such damages are within the discretion of the Court, and in this Court's view, should only be awarded with respect to conduct which is tantamount to "thumbing one's nose at" the law, the debtor and the Court. There is a thread in all that is before the Court that International was advised consistently that its actions in withholding payment were justified and that it was totally within the law to do what International chose to do. The withholding of benefits was clearly premised upon *Coar v. Kazimir, supra.,* and although the Court does not agree with International's counsel's view of that decision, it cannot be said that the incantation of that decision as the basis for International's actions *in asserting a right of setoff* was entirely without some legally speculatively valid basis. However, the continued conduct of International in not immediately seeking stay relief was totally contrary to applicable law, i.e., *Strumpf.* International did not respond to Radcliffe's counsel's November 11, 2005 letter. Even

being generous by construing International's answer to Radcliffe's adversary complaint as a request for relief from the stay to effect setoff, that request occurred well beyond the limited time frame for retention of funds prior to seeking relief from the stay to effect setoff endorsed by *Strumpf,* and then only in response to Radcliffe's adversary complaint. Until ordered to file a motion for stay relief, it is apparent to the Court that International took the position that it could simply withhold payments without seeking relief from the automatic stay. That is not the law, and it never has been the law. The continued retention of Radcliffe's benefits by International after it became aware of Radcliffe's filing of his Chapter 7 case without immediately seeking relief from the automatic stay—even in advance of Radcliffe's counsel's November 11, 2005 letter—clearly violated the limited window provided by *Strumpf; In re Orr, supra.*[11] Even if International had a valid right to assert setoff, its attempt to leverage its position by not immediately asserting that right by filing a proceeding in this Court to do so is an action which this Court will not condone.

There are several formulations of the standards to be applied with respect to whether punitive damages should be imposed in an action under 11 U.S.C. § 362(h), none of them binding on this Court. The Court adopts the following criteria stated in *In re Shade,* 261 B.R. 213, 216 (Bankr.C.D.Ill.2001):

The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; the prospect

for change is relevant to the amount of punitive damages to be awarded (citations omitted). Factors to be considered for an award of punitive damages for a willful violation of the automatic stay include the following: the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor. (citations omitted).

Applying the foregoing criteria to this case, the Court finds that it is necessary to change International's behavior—behavior which the Court deems egregious based upon the clear declarations of *Strumpf* that only a limited period of withholding prior to seeking stay relief can be justified. This case has been submitted on a stipulated record, and the Court finds from that record that if Radcliffe had not filed this adversary proceeding, International would have undertaken no affirmative action whatsoever to seek relief from the stay to effect setoff. The harm to Radcliffe is obvious—delay in determination of entitlement to receive his pension benefits, and indefinite withholding of those benefits without a valid legal basis for so doing. Given the amount of punitive damages which will be imposed, the Court is confident that International has the ability to pay them. International is clearly a sophisticated creditor; its motives were clearly to withhold payments without seeking the authority to do so required by applicable law. There was no provocation by Radcliffe.[12] The Court finds that there was "cavalier disregard for the automatic stay" (*In re Smith,* 170 B.R. 111, 118 (Bankr.N.D.Ohio 1994)), and that the con-

---

11. The Court departs from *Orr* with respect to whether punitive damages should be imposed.

12. Even if International had been determined to have an enforceable right of setoff, the nature of its conduct would still have subjected it to an award of attorney's fees and punitive damages for its willful violation of 11 U.S.C. § 362(a)(6).

duct evidenced in this case requires deterrence; *See, In re Dunning,* 269 B.R. 357 (Bankr.N.D.Ohio 2001); *In re Shade,* 261 B.R. 213 (Bankr.C.D.Ill.2001). An award of punitive damages is therefor justified. The Court determines that $10,000.00 should be awarded to Radcliffe as punitive damages.

As stated at the inception of this decision, Radcliffe's sole claim is based upon a violation of 11 U.S.C. § 362(a), and thus the Court has not determined in any manner issues relating to 11 U.S.C. § 524(a)(3). Obviously, the basis of the Court's decision implicates that statute as well, in that the Court has determined that International had no legal basis for withholding pension benefits payable to Radcliffe, whether its assertion of that right was pre-discharge or post-discharge. It is hoped that the parties will arrive at an arrangement which will not necessitate Radcliffe's filing of a separate action for violation of 11 U.S.C. § 524(a)(3).

On pages 30–31 of the March 14, 2007 order, the Court established a mechanism for the determination of attorney's fees to be awarded to Radcliffe. Pursuant to that procedure, Plaintiff's Statement of Services and Expenses was filed on April 12, 2007, a filing to which International did not respond. Having reviewed the plaintiff's submission, the Court finds that the request for attorney's fees of $13,106.50 is just and reasonable compensation for counsel for the plaintiff in this adversary proceeding, and that the plaintiff is entitled to an award of attorney's fees in the amount of $13,106.50 under 11 U.S.C. § 362(h) as applicable to this case.

## VI *DETERMINATION*

The Court determines that the International Painters and Allied Trades Industry Pension Fund violated the provisions of 11 U.S.C. § 362(a)(6) by its failure to pay

Barry G. Radcliffe pension benefits to which he was entitled under the plan administered by International for the period beginning September 1, 2005 through and including January 30, 2006.

The Court further determines that International's failure to pay pension benefits to Radcliffe for the period beginning September 1, 2006 through and including January 30, 2006 constituted a "willful violation" of 11 U.S.C. § 362(a)(6).

The Court further determines that damages sustained by Radcliffe, recoverable pursuant to 11 U.S.C. § 362(h), are comprised of the following:

a. The amount of pension benefits not paid from September 1, 2005 through and including January 30, 2006 ($12,185.00);

b. Interest from November 11, 2006 on the amount of $7311.00 at the rate of 8.25% until that amount is paid in full; interest at the rate of 8.25% on the amount of $2437.00 from December 1, 2005 until that amount is paid in full; and interest at the rate of 8.25% on the amount of $2437.00 from January 1, 2006 until that amount is paid in full;

c. Attorney's fees in the amount of $13,106.50; and

d. Punitive damages of $10,000.00.

The Court further determines that the Defendant's Motion for Relief from Automatic Stay filed in case number 05–67516 on May 31, 2006 is denied.

IT IS ORDERED, ADJUDGED AND DECREED as follows:

Barry G. Radcliffe shall have judgment against International Painters and Allied Trades Industry Pension Fund in an amount determined as follows:

1. The amount of pension benefits not paid from September 1, 2005 through and including January 30, 2006 ($12,185.00);

2. Interest from November 11, 2006 on the amount of $7311.00 at the rate of 8.25% until that amount is paid in full; interest at the rate of 8.25% on the amount of $2437.00 from December 1, 2005 until that amount is paid in full; and interest at the rate of 8.25% on the amount of $2437.00 from January 1, 2006 until that amount is paid in full;

3. Attorney's fees in the amount of $13,106.50; and

4. Punitive damages of $10,000.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Relief from Automatic Stay filed in case number 05–67516 on May 31, 2006 is denied.